18 N.J. Super. 495 (1952)
87 A.2d 546
JOHN STEPNOWSKI, PLAINTIFF-APPELLANT,
v.
SPECIFIC PHARMACEUTICALS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 1952.
Decided March 21, 1952.
*496 Before Judges JACOBS, EASTWOOD and FREUND.
Mr. William George argued the cause for the appellant.
Mr. Robert Shaw argued the cause for the respondent (Messrs. Shaw, Hughes & Pindar, attorneys).
The opinion of the court was delivered by JACOBS, S.J.A.D.
This is an appeal from a judgment entered in the Hudson County Court dismissing the plaintiff's amended complaint on the ground that his exclusive remedy was under the Workmen's Compensation Act.
The amended complaint alleges that the defendant operates a chemical plant in the City of Bayonne and the plaintiff was employed therein from November, 1950, until January, 1951; while he was so employed the defendant negligently and without proper instructions and precautions directed him to work on, handle, and process a chemical known as stilbestrol and containing female sex hormones; while thus *497 working, dust particles of the stilbestrol were inhaled and absorbed by the plaintiff causing "permanent impairment of function and biological change" which has resulted in his "effemination" and permanent sexual impotency; in addition he has "suffered and will in the future suffer great humiliation and mental anguish, embarrassment and ridicule"; and he demands damages for his injuries resulting from the defendant's negligence. The defendant moved to dismiss the amended complaint on the ground that the claim set forth therein was not within the lower court's jurisdiction; this motion was granted; and the plaintiff duly appealed from the ensuing judgment. In support of his appeal the plaintiff contends that the Workmen's Compensation Division is without statutory jurisdiction of his claim and that, accordingly, he retains his common law claim grounded on the defendant's negligence and cognizable in the lower court.
The plaintiff conceded at the argument on the appeal that since there was no written notification to the contrary (R.S. 34:15-9) his contract of employment with the defendant was subject to the provisions of article 2 of the Workmen's Compensation Act. See Staubach v. Cities Service Oil Co., 126 N.J.L. 479 (Sup. Ct. 1941). Furthermore, it was not disputed that if the plaintiff suffered a compensable injury by accident (R.S. 34:15-7) or occupational disease (R.S. 34:15-30), his exclusive remedy therefor is by claim for workmen's compensation under the terms of the act. See Staubach v. Cities Service Oil Co., supra; Scott v. Public Service Interstate Transp. Co., 6 N.J. Super. 226 (App. Div. 1950); United States Casualty Co. v. Hercules Powder Co., 4 N.J. 157, 163 (1950). Since the plaintiff's allegation is that the cumulative effect of his inhalation and absorption of stilbestrol dust particles in the course of his work over a substantial period of time was his described permanent injury, he has not asserted an injury "by accident" within the statutory language as interpreted by our courts. See Lion-dale Bleach Works v. Riker, 85 N.J.L. 426 (Sup. Ct. 1914); Butts v. General Motors Corp., 135 N.J.L. 376, 378 (Sup. *498 Ct. 1947). The remaining question is whether he has suffered a "compensable occupational disease" within the provisions of L. 1949, c. 29 (R.S. 34:15-30, R.S. 34:15-31) which became law before plaintiff's employment with the defendant began.
Prior to 1950 the act provided in R.S. 34:15-31 for compensation for a limited number of specifically designated occupational diseases if they occurred during employment and resulted in disability commencing within five months after termination of exposure. In L. 1949, c. 29, effective January 1, 1950, the Legislature broadened the coverage of the act to embody every "compensable occupational disease" which is defined to include "all diseases arising out of and in the course of employment, which are due to causes and conditions which are or were characteristic of or peculiar to a particular trade, occupation, process or employment, or which diseases are due to the exposure of any employee to a cause thereof arising out of and in the course of his employment." It seems clear to us that this deliberately comprehensive language includes the disease and injury alleged in the plaintiff's complaint; they arose out of and in the course of his employment and were due to the presence and his inhalation and absorption of stilbestrol dust particles, a cause or condition which was peculiar to the defendant's chemical trade, and to which the plaintiff had been exposed by virtue of his work. Cf. LeLenko v. Wilson H. Lee Co., 128 Conn. 499, 24 A.2d 253 (1942); Sandy v. Walter Butte Shipbuilders, 221 Minn. 215, 21 N.W.2d 612 (1946).
The plaintiff contends that his disease and injury are not within the generally recognized risks of the defendant's trade and that consequently he did not suffer an occupational disease within the language of the court in Bollinger v. Wagaraw Building Supply Co., 122 N.J.L. 512 (E. & A. 1939). There, although Chief Justice Brogan at one point expressed the view that an occupational disease "is one that from common experience is visited upon persons engaged in a particular occupation, in the usual course of events," he *499 recognized that it "is one that is incidental to the employment itself." The Bollinger case was decided a decade before the passage of L. 1949, c. 29, and its definition of occupational disease, if in anywise inconsistent, must give way to the definition embodied in the later statutory enactment. Under the express statutory definition an employee's disease which results from his handling of stilbestrol and his inhalation and absorption of its dust particles in the course of his employment at his employer's chemical plant would constitute an occupational disease without regard to whether the risk of the disease was generally known. See LeLenko v. Wilson H. Lee Co., supra, where Chief Justice Maltbie in discussing occupational diseases under the Connecticut Workmen's Compensation Act pointed out that an award "is not precluded because the risk is one which has not become generally recognized or because only employees unusually susceptible will suffer from it."
The plaintiff further contends that his working and earning capacity have not been diminished and consequently he has not suffered a compensable disability under the act. Our courts have held, however, that a permanent injury which involves a loss of physical function and detracts from the former efficiency of the body or its member in the ordinary pursuits of life, is compensable even though there be no diminution in earning power or capacity to work. See Calabria v. Liberty Mutual Ins. Co., 4 N.J. 64, 70 (1950); Everhart v. Newark Cleaning and Dyeing Co., 119 N.J.L. 108, 111 (E. & A. 1937); Sutkowski v. Mutual Chemical Co. of America, 115 N.J.L. 53 (Sup. Ct. 1935). In the Sutkowski case an award was had for a perforation of the septum which resulted from a compensable occupational disease but was not accompanied by any working disablement; in the course of its opinion the court said:
"This is a compensable disability, even though Sutkowski's capacity to render the service at which he was engaged was not thereby impaired, or his earning power diminished. The test is not impairment of earning capacity; it is rather the `loss of physical function *500 which detracts from the former efficiency of the body or its members in the ordinary pursuits of life.'"
Cf. Hopler v. Hill City Coal & Lumber Co., 7 N.J. Super. 24, 28 (App. Div. 1950), affirmed 5 N.J. 466 (1950). Similarly, in the Everhart case the court recognized that compensation may be had for bodily disfigurement which has not prevented the employee from continuing his work. See also Hercules Powder Co. v. Morris Common Pleas, 93 N.J.L. 93 (Sup. Ct. 1919), where the employee lost one of his testicles as the result of an accident arising out of and in the course of his employment; the court sustained an award for the "permanent impairment of his physical entity."
The plaintiff suggests that it will be difficult to determine the amount of compensation payable to him under the terms of the act; there should be no greater difficulty in fixing an award for his permanent physical and neurological injury than was presented in the Sutkowski, Everhart, Hercules and similar cases. See R.S. 34:15-12 (w); R.S. 34:15-32. The plaintiff further suggests that considerations of public policy require that claims of the particular type set forth in his amended complaint be excluded from the terms of the act. Although that suggestion might better be addressed to the Legislature, we fail to perceive its basis. The act in its present form is intended to provide expeditious compensation pursuant to a strict statutory formula for disability resulting from compensable industrial accidents and occupational diseases. It benefits the employee by eliminating common law defenses such as the employer's lack of negligence or fault and the employee's contributory negligence and assumption of risk, and it benefits the employer by providing a "limited and determinate" (Bradford Electric Light Co. v. Clapper, 286 U.S. 145, 159, 76 L.Ed. 1026, 1035 (1932)) liability in place of the uncertain common law liability. See United States Casualty Co. v. Hercules Powder Co., 4 N.J. 157, 163 (1950). It seems to us that these benefits apply to the claim asserted in the amended complaint in the same manner as they do to claims for injuries resulting *501 from compensable industrial accidents and occupational diseases generally. Cf. Danek v. Hommer, 14 N.J. Super. 607, 611 (Cty. Ct. 1951), affirmed 9 N.J. 56 (1952).
The judgment entered in the County Court is affirmed.